```
                 UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RALPH AMES,                         :   CASE NO. 3:12-CV-0405
                                    :
          Petitioner                :   (Judge Kosik)
                                    :
     v.                             :   (Magistrate Judge Smyser)
                                    :
                                    :
DAVID EBBERT,                       :
                                    :
          Respondent                :
```

## REPORT AND RECOMMENDATION

The petitioner in this habeas corpus case is a federal prisoner. He is challenging the prison disciplinary process which led to the loss of good conduct time. He claims that he was denied due process when he was issued a misconduct report more than twenty-four hours after the alleged infraction. He also claims that the Discipline Hearing Officer violated his due process rights by not being impartial, by not providing an adequate statement of reasons for his decision, and by retroactively applying a new policy to him without notice. He also claims that the application of the purported new policy violated the Ex Post Facto Clause. Because we conclude that

...

the petitioner's claims are without merit, we recommend that the petition be denied.

I. Background and Procedural History.

The petitioner, proceeding *pro se*, commenced this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

On September 28, 2011, the petitioner received an incident report charging him with use of the telephone in a manner prohibited by Section 297. *Doc. 6-2* at 42. The incident report alleges that, on September 10, 2012, the petitioner made two calls using another inmate's account. *Id.* The reporting officer stated that he became aware of this on September 28, 2011, when he recognized the petitioner's voice while monitoring recordings of the calls. *Id.*

The incident report was referred to the Unit Discipline Committee, which in turn referred the report to the Discipline Hearing Officer (DHO) for a hearing. *Id.* at 44.

The petitioner waived his right to staff representation and to call witnesses at the hearing. *Id.* at 48.  At the DHO hearing, the petitioner stated that the other inmate had made the calls for him to check on his mother and daughter. *Id.* at 50.  After considering the incident report, the telephone records of the petitioner and of the other inmate, and the petitioner's statement, the DHO afforded greater weight to the reporting staff member's assertion that he recognized the petitioner's voice on the calls. *Id.* at 52.  The DHO also noted, however, that even if he accepted the petitioner's statement that the other inmate made the calls for him that would not negate the petitioner's culpability because that also would be a violation of the regulations. *Id.*

The DHO found the petitioner guilty of the charge, and he sanctioned him to among other things the forfeiture of good

3

conduct time credits. *Id.* at 53.  The DHO stated the reasons for his actions as follows:

> The use of a telephone while incarcerated is a privilege, not a right.  It is an important part of the institution's security that inmates only be allowed to contact those persons authorized.  Not only is this an internal security matter but the Bureau of Prisons has an obligation, to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting businesses or to threaten or harass members of the public.  For these reasons the Bureau of Prisons has developed telephone monitoring procedures.
>
> Three-way calls, call forwarding, using another inmate's telephone account, sharing PAC numbers, speaking in code, speaking on speaker phones or call forwarding, using the ITS to promote gambling, can not and will not be tolerated.  Conduct of this nature whereby an inmate utilizes the ITS account of another inmate, especially while on telephone restriction, is egregious and can not be tolerated.
>
> The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior.  The DHO will note for the record this inmate presents an extensive disciplinary history to include prior infractions for fighting, use of illicit substances, phone abuse, possession of unauthorized items, refusing work/programs, as well as demonstrates a continued inability to abide by institution rule.  The DHO will also annotate for the record AMES was on telephone

4

> restriction on the dates of the prohibited act. Not only does this violate institution rule, but also beguiles the objectives of the inmate discipline process.
>
> Disciplinary segregation, forfeiture of non-vested good conduct time and disallowance of good conduct time were imposed to demonstrate the seriousness of his actions and as punishment for his conduct.  The loss of commissary, visiting, TRULINCS and telephone privileges, as well as restriction to quarters, was imposed to deter future behavior and promote compliance with institutional rules and regulations.  It is hoped that these sanctions prompt inmate AMES to modify his behavior and deter others from engaging in such activities in the future.

*Id.* at 53.

The DHO's report is dated November 1, 2012, and the DHO report indicates that it was delivered to the petitioner on November 2, 2011.  The petitioner, however, asserts that he did not receive a copy of the DHO's report until November 4, 2011.  He also asserts that the officer who gave him the report told him that his twenty days to appeal did not begin to run until the day he was given the report and that weekends and holidays do not count toward the twenty-day appeal period.  He asserts that he gave his appeal of the DHO's decision to prison staff

5

for mailing on November 21, 2011.  The petitioner's appeal was rejected as untimely because it purportedly did not reach the Regional Office until November 28, 2011.

II. Discussion.

The petitioner claims that his due process rights were violated in connection with the disciplinary process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  A due process claim requires a two-part analysis.  First, the court must determine whether the interest asserted by the petitioner is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Holt,* 432 Fed.Appx. 49, 51 (3d Cir. 2011). Thus, where a disciplinary proceeding may result in the loss of good time credits, a prisoner is entitled to certain procedural protections. *Id.* Nevertheless, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

In *Wolff,* the Supreme Court determined the elements of process due to a prisoner who is facing a serious institutional misconduct charge which could lead to the deprivation of a protected liberty interest. The Court held that the right to due process requires that the prisoner receive a hearing preceded by at least 24 hours advance written notice of the charged violations. *Id.* at 564. The inmate must be allowed at the hearing to call witnesses and to present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Id.* at 566. Where an illiterate inmate is involved or

7

where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, the inmate should be allowed to seek the aid of a fellow inmate or aid in the form of help from a staff member. *Id.* at 570.  There must be a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564.  Additionally, the Court subsequently held, due process requires that there be some evidence to support the findings of the disciplinary hearing fact finder. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. § 541.1, *et seq.*  Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. § 541.5(a).  The incident report will ordinarily be served on the inmate within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. *Id.*  The incident is then investigated. *Id.* at § 541.5(b).

After the incident is investigated, the Unit Discipline Committee reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. *Id.* at § 541.7(a).  Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. *Id.* at § 541.3(a).  If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. *Id.* at § 541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. § 541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. *Id.* at § 541.8(c).  The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. *Id.* at § 541.8(d) & (e).  The

9

prisoner is entitled to make a statement and to present documentary evidence. *Id.* at § 541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. *Id.* The DHO considers all evidence presented at the hearing. *Id.* The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. *Id.* Following the hearing, the DHO must provide a written report documenting whether the prisoner was advised of his rights. *Id.* at § 541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. *Id.*

The petitioner claims that he should have received the incident report within twenty-four hours of the phone calls. The regulation, however, provides that the incident report will ordinarily be served on the inmate within twenty-four hours of

10

the time the staff member became aware of the prisoner's involvement in the incident. 28 C.F.R. § 541.5(a).  In this case, the reporting officer stated that he became aware of the violation on September 28, 2011, when he recognized the petitioner's voice while monitoring recordings of the calls.  The petitioner was served with the incident report on September 28, 2011.  Thus, the regulation was not violated.  Moreover, due process requires only that the petitioner receive notice of the charges at least twenty-four hours prior to the hearing, and in this case there is no dispute that he received notice of the charges at least twenty-four hours before the hearing.  Accordingly, the petitioner was not denied due process by the timing of service of the incident report.

   The petitioner claims that the DHO was not impartial.  In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body." *Meyers v. Alldredge*, 492

F.2d 296, 306 (3d Cir. 1974).  The petitioner has not established that the DHO was not impartial.

The petitioner also claims that the DHO failed to provide an adequate statement of his reasons.  The DHO provided an adequate statement of his reasons for finding that the petitioner had committed the offense and of his reasons for imposing sanctions.

The petitioner contends that the DHO falsely stated that the reporting officer was an eyewitness even though the reporting officer did not visually observe the phone calls and did not review any videotape of the phone calls.  The reporting officer asserted that he listened to recordings of the phone calls. We do not use the term "earwitness."  Instead, the term "eyewitness" is used to refer to a person who has first hand knowledge of the material fact being related by the person, whether through the eyes, ears, or some other sense organ. Thus, the DHO's reference to the reporting officer's account as an eyewitness account was not error and was not a violation of due process.

The petitioner also contends that the DHO applied an old version of Code 297.  28 C.F.R. § 541.3, Table 1 defines a Code 297 violation as "[u]se of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act."  Prior to June 21, 2011, a Code 297 violation was defined as "[u]se of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls, conference calling; talking in code)." 28 C.F.R. § 541.13 (table 3)(2010).  *See also* 76 F.R. 11078-01 (delaying effective date of changes to Inmate Discipline Program until June 20, 2011).

The DHO stated that "[t]hree-way calls, call forwarding, using another inmate's telephone account, sharing PAC numbers, speaking in code, speaking on speaker phones or call forwarding, using the ITS to promote gambling, can not and will not be tolerated." *Doc. 6-2* at 53.  The petitioner

13

suggests that the use of those examples indicates that the DHO applied the prior version of Code 297. We disagree. The DHO did not state that he was applying the prior version of Code 297. That he gave examples that were listed in the prior version of Code 297 does not mean that he was applying the prior version. Moreover, the DHO made it clear that he found the petitioner guilty of a Code 297 violation for using another inmate's account to make calls. Use of another inmate's account to make calls falls within the scope of the current version of Code 297.

The petitioner also contends that the DHO denied him due process and violated the Ex Post Facto Clause by retroactively applying a new policy that allowed the DHO to use his prior misconducts to impose harsher sanctions on him. The new version of the regulations took effect on June 20, 2011, *see* 76 F.R. 11078-01 (delaying effective date of changes to Inmate Discipline Program until June 20, 2011), which is before the phone calls took place in September of 2011. Thus, using the new version of the regulations and their provision relating to enhanced sanctions was not retroactive. Moreover, it is

14

common to take prior offenses into consideration in imposing a sentence. *See Almendarez-Torres v. U.S.,* 523 U.S. 224, 230 (1998).  Using a prior offense to increase the punishment for a current offense does not violate the Ex Post Facto Clause because the punishment is imposed for the new offense, not the prior one.  *United States v. Rodriguez*, 553 U.S. 377, 385-86 (2008)(explaining that, when prior convictions are used to enhance the punishment for a new conviction, the punishment is considered to be imposed solely for the new conviction). Accordingly, the petitioner's due process and Ex Post Facto Clause claims are without merit.

Because we conclude that the petitioner's claims are without merit, we need not address the respondent's contention that the petitioner failed to exhaust administrative remedies. We note that some of the petitioner's claims are based on the denial of his administrative remedy appeal.  "It is well-established that inmates do not have a constitutionally protected right to a prison grievance system." *Mitchell v. Dodrill,* 696 F.Supp.2d 454, 469 (M.D.Pa. 2010)(Rambo, J.). Thus, the denial of the petitioner's administrative remedy

15

appeal does not amount to a violation of his constitutional rights.

III.   Recommendations.

    Based on the foregoing, it is recommended that the petition for a writ of habeas corpus be denied and that the case file be closed.

                                              <u>/s/ J. Andrew Smyser</u>
                                              J. Andrew Smyser
                                              Magistrate Judge

Dated: July 2, 2012.